UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CR208SNL(MLM) |
| ) | |
| CHARLES B. EDEN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the pretrial Motions filed by defendant. An Evidentiary Hearing was held on May 20, 2005. This case is set for trial on **July 11, 2005** before the Honorable Stephen N. Limbaugh.

**1.    Defendant's Motion to Compel Discovery  [Doc. 20]**

In this Motion defendant request the government to provide copies of all U.S. individual income tax returns on which Eden Financial Services, Charles B. Eden or the electronic filing number (EFIN) 435354 were listed as the preparer for calendar years 1999, 2000 and 2001. At the hearing on 5/20/05 the government indicated that it planned to turn over these returns. Therefore this Motion will be granted.

**2.    Defendant's Motion for Production of Grand Jury Transcripts or Reports**
       **[Doc. 22]**

Defendant requests Grand Jury materials because he states that the discovery provided by the government so far fails to include any evidence with regard to the essential element of "willfulness." He says this constitutes a particularized need.

Rule 6(e)(3)(C)(II) of the Federal Rules of Criminal Procedure provides that disclosure of grand jury materials may be had "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(3)(C)(II). The Eighth Circuit has expressed

the balance between the policy of secrecy which is to be afforded grand jury proceedings and the limited exceptions in which disclosure may be made by recognizing that "the party moving for disclosure must establish a `particularized need.'" Thomas v. United States, 597 F.2d 656, 657 (8th Cir. 1979) and cases cited therein; United States v. Faltico, 687 F.2d 273, 276 (8th Cir. 1982), cert. denied, 460 U.S. 1088 (1983). See also Smith v. United States, 423 U.S. 1303, 1304 (1975). Defendant has not shown a particularized need for the grand jury records requested. "Such `fishing expeditions' do not provide sufficient grounds for disclosure." Thomas, 597 F.2d at 658 and cases cited therein. Accordingly, defendant has failed to demonstrate the "particularized need" required to justify disclosure of otherwise secret grand jury materials. The Motion for Production of Grand Jury Transcripts or Reports will be denied.

The government stated at the hearing that it is aware of its responsibilities under 18 U.S.C. § 3500 (Jencks Act) and will provide the statements of all trial witnesses who previously testified at the Grand Jury. Consistent with the custom in this district, the government will produce these statements no later than the Friday before the week the trial is to begin.

3. **Defendant's Motion for an Order Requiring the Government to Disclose Full Nature and Extent of Consideration Offered to or Sought by the Government and its Agents on Behalf of Witnesses [Doc. 23]**

The government responded at the hearing that it had turned over a list of ten (10) taxpayers, the returns of whom it intends to rely at trial. The government has provided the audit reports for these ten (10) listed taxpayers. The government stated that no favorable treatment or other consideration has been given these taxpayers. The government further stated that it is aware of its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963) and will fully comply. In addition, the government indicated that it does not at this time intend to offer 404(b) evidence concerning other taxpayers. However, if the government does decide to use such evidence, it will comply fully with Rule 404(b).

4. **Defendant's Motion to Suppress Evidence [Doc. 21]**

**Defendant moves to suppress a phone conversation between defendant and Internal Revenue Service (IRS) Agent Rose Torlina on October 17, 2002 and an oral interview between defendant and IRS Special Agent Melissa McFadden on October 8, 2003, on the ground that the IRS agents involved misstated the purpose for the interviews and that therefore any statements by defendant were involuntary. Defendant's counsel argued at the hearing that defendant was told the agents wanted to talk to him about his own returns (not those of others which he prepared).**

**At the hearing the government presented the testimony of IRS Agent Rose Torlina and IRS Special Agent Melissa McFadden. Defendant presented no testimony or evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.**

## FINDINGS OF FACT

**1.     October 17, 2002**

**In October, 2002 Rose Torlina was employed in Florissant by the IRS. She had been with the IRS for 10-11 years. She was a civil examiner whose duties as an IRS Agent were to examine Federal Income Tax Returns.**

**She spoke to defendant on the phone twice. She did not at anytime meet with him face-to-face. The purpose of the first conversation [Ms. Torlina did not recall the exact date] was to schedule a meeting with defendant to discuss his own income tax returns. In prior correspondence he had requested a meeting with an examiner. They set a date but defendant did not appear. Therefore, she called him on October 16, 2002 and left a message. Defendant called her back on October 17, 2002. The purpose of this second conversation was to find out why he had not appeared at the meeting and to get information regarding his own tax returns.[1]**

---

[1]     During the conversation she sensed he was evasive, angry and aggressive in his responses. For example, when she asked defendant questions he frequently told her that it was none of her business. Also when she asked him questions about things he should recall he said "I'm not Enron or H&R Block; I'm just a small business."

Because he had not appeared and records were not available, she is permitted under IRS rules to use indirect methods in her examination. She therefore obtained a list of the number of returns he had prepared for others in order to calculate his income from the amount charged for the preparation of each return. When she spoke to defendant on October 17, 2002 she was unaware of any other investigation with regard to defendant. She was investigating his own tax returns and as a result had to know the number of persons for whom he prepared returns. After the conversation she obtained 3 - 4 of the returns he prepared and found they were substantially in error.

During the conversation on October 17, 2002 defendant mentioned a "prior agent" with whom had dealt. Ms. Torlina told him she was unaware of a "prior agent" and informed him that she did not see anything about a "prior agent" in the file. It would have been standard practice for some notation to be in the file if defendant had dealt with a "prior agent."

2.   **October 8, 2003**

Melissa McFadden is a Special Agent in the IRS Criminal Investigations Division. She has been with the IRS since 2000. She was assigned to investigate defendant based on allegations he intentionally prepared tax returns with deliberate mis-statements. The case was referred to her approximately 12/27/02 by the Examination Division. She obtained the tax forms defendant prepared and reviewed them. She interviewed some of the taxpayers.

She tried to interview defendant. She obtained his phone number from Ms. Torlina's memo and called him and left a message. Defendant called back and left a message on her voice mail. On October 8, 2003 she and another IRS Agent went to defendant's residence at 2206 St. Louis Avenue. They knocked but received no answer. Defendant came around from the rear of the house. She recognized him from a photo she had. The agents introduced themselves as IRS Agents with the Criminal Investigation Division. SA McFadden told defendant they wanted to discuss his preparations of tax returns which intentionally included material false information.

Defendant was not handcuffed. He was not detained or restrained. A flight of steps separated defendant from the Agents. SA McFadden attempted to read defendant a "Non-custodial Statement of Rights" which is provided to IRS criminal investigators. Defendant said he did not want to hear the rights. He kept talking while she tried to read the rights. He said that if the agents wanted to talk to him he would want an attorney. They asked his name and phone number which he provided. Defendant also said he was not represented by a lawyer at that time. Defendant then made statements not in response to questions by the agents. Defendant also said he had 23 years of law enforcement experience with St. Louis County. The agents did not question him about that. The agents terminated the interview because defendant would not let them read the rights. He appeared agitated but was fully coherent.

## CONCLUSIONS OF LAW

When a suspect is both in custody and interrogated, he must be advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 444 (1966). In October, 2002 when Ms. Torlina twice spoke to defendant on the phone, he clearly was not in custody.

Custody for purposes of Miranda warnings occurs either upon formal arrest or any other circumstances in which the suspect is deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 468 U.S. 420, 429 (1984). The extent of the physical or psychological restraints placed on defendant must be examined in light of whether a "reasonable person in the suspect's position would have understood the situation" to be one of custody. Berkemer, 468 U.S. at 442. The determination of custody arises from an examination of the totality of the circumstances. United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989), citing United States v. Lanier, 838 F.2d 281, 285 (8th Cir. 1988) (per curiam).

The undersigned finds that a reasonable person under the circumstances stated above would not believe that he was under arrest. The first phone call was merely to set up a meeting. The facts show that the interview was not a custodial interrogation and that any statements made by defendant were voluntary. Because the statement was non-custodial, the Miranda warnings need

not have been given.  Berkemer v. McCarty, 468 U.S. 420 (1984); Beckwith v. United States, 425 U.S. 341 (1976).

The second conversation, when defendant called Ms. Torlina on October 17, 2002 was again clearly and without argument a non-custodial phone call and the Miranda warnings need not have been given.

Defendant's only challenge to the calls was that Ms. Torlina misrepresented the purpose of the calls and that therefore, defendant's statements were not voluntary. The evidence is unequivocal and clear that Ms. Torlina called defendant to discuss his own tax returns. She is a civil examiner. She was not investigating the instant charges nor did she know of any pending investigation. The only reason she looked up the number of returns he prepared was to calculate his own income as a tax preparer. With regard to the conversations with Ms. Torlina, defendant's Motion should be denied.

On October 8, 2003 SA McFadden went to defendant's residence. She specifically told him she was a criminal investigator investigating allegations that he had prepared tax return for others with deliberate misstatements in them. Clearly defendant was not in custody. He was outside of his own home and separated from the agents by a flight of steps. He was not handcuffed or detained or restrained in any way.

When SA McFadden tried to read the "Non-custodial Statement of Rights" defendant refused to allow it and said he did not want to hear the rights and made statements not in response to questions by the agents. They terminated the interview because he would not allow the reading of the rights. "The Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966).

SA McFadden did not mis-represent the purpose of her attempted interview but immediately told him the agents were there to investigate allegations that he had prepared tax

returns for others with deliberate misstatements. Defendant's Motion to Suppress should be denied as to the October 8, 2003 interview.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Discovery is **GRANTED**. [Doc. 20]

**IT IS FURTHER ORDERED** that Defendant's Motion for Production and Inspection of Grand Jury Transcripts or Reports is **DENIED** with the exception of statements of trial witnesses who testified at the Grand Jury as more fully set out herein. [Doc. 22]

**IT IS FURTHER ORDERED** that Defendant's Motion for an Order Requiring the Government to Disclose Full Nature and Extent of Consideration offered to or Sought by the Government and its Agents on Behalf of Witnesses is **GRANTED** to the extent of the government's offer to produce and **DENIED** in all other respects. [Doc. 23]

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence be **DENIED**. [Doc. 21]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler  
MARY ANN L. MEDLER  
UNITED STATES MAGISTRATE JUDGE

Dated this  24th   day of May, 2005.